[Cite as *In re J.B.*, 2022-Ohio-946.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE J.B.

A Minor Child

[Appeal by Cuyahoga County Division
of Children and Family Services]

:
:
:
:
:
:
:

No. 110516

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-17-901225

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Appellant, the Cuyahoga County Division of Children and Family Services ("CCDCFS"), appeals the juvenile court's journal entry ordering the prior award of planned permanent living arrangement ("PPLA") to remain in effect for J.B. after he was committed to the custody of the Ohio Department of Youth Services ("ODYS"). After reviewing the law and the pertinent facts of the case, we affirm.

## I.    Facts and Procedural History

{¶ 2}    J.B. was committed to the emergency temporary custody of CCDCFS on April 19, 2017, and on April 27, 2017, the juvenile court adjudicated J.B. neglected.  The juvenile court returned J.B. to the legal custody of his mother on October 30, 2017, with an order of CCDCFS protective supervision; however, on July 25, 2018, temporary custody was again awarded to CCDCFS.  On July 9, 2020, the juvenile court committed J.B. to "the Planned Permanent Living Arrangement of Cuyahoga County Division of Children and Family Services" and "terminated" the earlier order of temporary custody (the "July 9, 2020 order").  The court concluded that "the permanency plan for the child is:   Planned Permanent Living Arrangement."

{¶ 3}    In a separate case, while under CCDCFS's PPLA, J.B. was adjudicated delinquent on March 26, 2021, for felonious assault with a firearm specification, discharge of a firearm on or near prohibited premises, and criminal damaging or endangering.  As a result, J.B. was committed to the legal custody of ODYS for an indefinite term consisting of "a minimum of two (2) years up to a maximum term of [J.B.'s] twenty first (21) birthday."  In that order, the juvenile court noted that J.B. was "a permanent planned living arrangement ward" of CCDCFS and committed him to the legal custody of ODYS.

{¶ 4}    CCDCFS filed a "Notice of Termination of PPLA due to ODYS Commitment" with the juvenile court on April 2, 2021, claiming that its PPLA and legal custody of J.B. terminated by operation of law upon J.B.'s commitment to

ODYS. The juvenile court held a hearing on that notice, despite no hearing being requested, on April 26, 2021. At the hearing, the court heard from CCDCFS, the lawyer for J.B.'s mother, and J.B.'s guardian ad litem ("GAL").

{¶ 5} In a journal entry on May 4, 2021, the juvenile court found that CCDCFS's notice was "not well taken" and that the "Court's prior order of PPLA shall remain in effect." It is from this entry that CCDCFS appeals.

## II. Law and Analysis

{¶ 6} "Where the argument addresses an issue of law, such as whether the judgment is contrary to law or the court made an error of law, this court reviews that decision de novo, or without deference to the trial court's decision." *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, ¶ 12.

{¶ 7} CCDCFS raises one assignment of error, arguing that "the trial court order continuing in effect the custodial order of [PPLA] for [J.B.] is contrary to law." Specifically, CCDCFS argues that the trial court erred in continuing its PPLA and legal custody of J.B. because "ODYS and CCDCFS cannot have a concurrent right to make the decisions contemplated by the statutes defining legal custody, and therefore it is irreconcilable for both ODYS and CCDCFS to be concurrent legal custodians" of J.B. In support of its assertion, CCDCFS points to an array of statutes and administrative code sections, including R.C. 2151.011(B)(21) and 5139.01(A)(3), which delineate duties of CCDCFS and ODYS when the agencies are granted legal custody of a minor. CCDCFS argues "it should be self-evident that an order

maintaining the child in the custody of CCDCFS despite the fact that the child has been committed to the custody of ODYS is contrary to law." CCDCFS maintains that its use of a "Notice of Termination" is appropriate, and that "no motion was required" to terminate the July 9, 2020 order.

{¶ 8} It is notable that CCDCFS filed a "Notice" — to which no opposition would be anticipated — to raise the issue of whether CCDCFS had any continuing obligations to J.B. after his commitment to ODYS. J.B.'s GAL explained his position on CCDCFS's notice at the hearing, asserting "I do believe * * * that [CCDCFS] should have petitioned this Court through a motion to terminate custody and not a notice." CCDCFS asserts that there is an "irreconcilable conflict" between its duties under statute and the duties of ODYS without considering whether, under this particular permanency plan, any of CCDCFS's duties could, in fact, be accomplished notwithstanding the commitment to ODYS. At the hearing, J.B.'s GAL raised that very issue explaining the J.B.'s current social worker "has a pretty good grasp on what [J.B's] needs are going to be in the event that he is released * * *. So it doesn't make much sense to me * * * [to] terminate one thing and then you start it all over again with someone else" when J.B. is released from ODYS. It is significant that J.B. is only in this situation because he was adjudicated neglected by his biological parents. In these truncated proceedings, neither J.B.'s mother nor J.B.'s guardian ad litem provided any written response to the "Notice," and there was no indication that they were in agreement. While CCDCFS presented what it felt was in the best interest of CCDCFS, J.B.'s GAL felt as though it would be in J.B.'s

best interest "for [CCDCFS] to stand in the shoes as [J.B.'s] guardian in the community" while in ODYS custody because he was in a PPLA prior to being committed to ODYS.

{¶ 9} This case is distinguishable from the recent decision in *In re K.M.P.*, in which this court vacated a judgment granting emergency temporary custody of a child to CCDCFS contemporaneously with that child's commitment to ODYS. *In re K.M.P.*, 8th Dist. Cuyahoga No. 110569, 2022-Ohio-466, ¶ 1. There, at issue was emergency temporary custody of the child. Here, a permanency plan — not temporary custody — was in place for J.B. at the time of his delinquency proceedings. Whether a commitment to ODYS terminates or is wholly inconsistent with a prior planned permanent living arrangement order was not at issue in *In re K.M.P.*

{¶ 10} Without reaching a conclusion on the merits of CCDCFS's sole assignment of error, we find that CCDCFS fails to demonstrate that a notice of termination is the proper vehicle for terminating the juvenile court's July 9, 2020 order. CCDCFS has failed to provide any caselaw, or statutory or other legal authority supporting its position that a notice, rather than a motion, is appropriate to bring this important issue before the court.

{¶ 11} Based on the foregoing, CCDCFS's sole assignment of error is overruled.

{¶ 12} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
MICHELLE J. SHEEHAN, P.J., DISSENTS (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, J., DISSENTING:

{¶ 13} I respectfully dissent. I believe we are obligated to follow this court's recent precedent in *In re K.M.P.*, 8th Dist. Cuyahoga No. 110569, 2022-Ohio-466, and reverse the juvenile court's decision. The decision allowing the prior PPLA order to remain in place effectively committed the legal custody of the child to both CCDCFS and ODYS. In my view, affirming the juvenile court's decision in this case is inconsistent with the holding of *K.M.P.* that the juvenile court does not have the statutory authority to commit a child to the legal custody of both CCDCFS and ODYS simultaneously. *Id.* at ¶ 10.

{¶ 14} Pursuant to R.C. 2151.353(A)(5), CCDCFS is granted the legal custody of a minor under a PPLA order. Pursuant to R.C. 2151.011(B)(21), as the legal custodian, CCDCFS has the right "to have the physical care and control of the child and to determine where and with whom the child shall live, and the

right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities."

**{¶ 15}** The statutory rights and duties prescribed for CCDCFS as the child's legal custodian overlap significantly with the rights and duties given to ODYS as the legal custodian of the child. R.C. 5139.01(A)(3) provides that, as the legal custodian of the child, ODYS

> has the following rights and responsibilities: the right to have physical possession of the child; the right and duty to train, protect, and control the child; the responsibility to provide the child with food, clothing, shelter, education, and medical care; and the right to determine where and with whom the child shall live

subject to any residual parental rights and responsibilities and the minimum periods of statutorily prescribed institutional care.

**{¶ 16}** In *K.M.P.,* this court concluded that, pursuant to these statutory provisions, the juvenile court does not have the statutory authority to commit a juvenile to the legal custody of both CCDCFS and ODYS simultaneously. *Id.* at ¶ 10. While *K.M.P.* involved a grant of temporary custody to CCDCFS and this case involves an order of PPLA, CCDCFS has legal custody of the child under both orders. *See* R.C. 2151.011(B)(55) ("'temporary custody' means legal custody of a child who is removed from the child's home") and R.C. 2151.011(B)(38) (under a PPLA order, the court "gives legal custody of a child to a public children services agency or a private child placing agency without the termination of parental rights").

{¶ 17} The majority declines to reach the merits of the legal issue presented by CCDCFS on the ground that it filed a notice to terminate the PPLA order instead of a motion requesting the termination. While the best practice may be for the agency to file a motion rather than a notice, the juvenile court here conducted an extensive hearing on the agency's notice, where both the child's GAL and counsel for the child's mother appeared and were heard on the issue of whether the PPLA order should be terminated.[1] More importantly, the juvenile court's decision finding the notice "not well-taken" has the same legal effect of committing J.B. to the legal custody of both CCDCFS and ODYS, a result inconsistent with *K.M.P.* For these reasons, I respectfully dissent.

---

[1] The transcript of the hearing reflects that the parties discussed at length ODYS's statutory obligations to investigate an appropriate caregiver if the child is released prior to reaching the age of majority. A caregiver could include, among others, parents, relatives or CCDCFS, if appropriate. The record, however, indicates that J.B. will likely reach the age of majority prior to his release from ODYS.